(48 App. Div. 344.)

### CHAMPAGNE v. POWELL MEDICINE CO.

(Supreme Court, Appellate Division, Third Department. March 7, 1900.)

1. CONTRACT—DAMAGES—RECOVERY—AMOUNT.
   Action on a contract for the sale of letters patent on certain medicines, payable partly by percentage on sales, upon semiannual statements of the purchaser, where the relief asked for is the delivery of the stipulated statement, and also damages, is one in equity, so that damages accruing after the commencement of the action may be included.

2. SAME—ACTION.
   A clause in a contract provided that payment should be made to plaintiff on a percentage of sales. An action was brought for payments alleged to be due, and settled by stipulation for all moneys due at that time, the stipulation providing that nothing contained therein was to be considered as modifying the contract. Held, that plaintiff is not precluded from bringing a further action for payments subsequently becoming due.

3. SAME—PERFORMANCE.
   A clause in a contract for the sale of letters patent for certain medicines, providing that, in addition to a cash payment and percentage on sales, a sum was to be paid in case the business of selling the medicines was successful, such success to be determined by the trustees of the purchaser, a determination by such trustees, in good faith, and after a fair trial, that the sales were not successful, is conclusive.

Appeal from judgment on report of referee.

Suit by Fred Champagne against the Powell Medicine Company on a contract. From a judgment for plaintiff, defendant appeals. Affirmed on condition of reduction of claim.

Upon the 13th day of January, 1882, the parties to this action entered into a contract in substance providing for the sale by the plaintiff to the defendant of certain letters patent upon certain medical compounds, six in number. The part of the contract material to this controversy reads as follows: "And in consideration of the aforesaid assignments the party of the first part agrees and is to pay the said Champagne, his heirs and assigns, the sum of four thousand

dollars, as follows: One thousand dollars on the execution and delivery to said party of first part of the aforesaid assignments, letters patent, receipts, &c., and the remaining three thousand dollars to be paid as follows: Five dollars on every one hundred dollars received by said company for the said medicines and compounds, until the said sum of three thousand dollars is fully paid; such payment to be made semiannually, to wit, on the first days of January and July in each year. And it is further understood and agreed that said company is not to pay said Champagne the said sum of five dollars on every one hundred dollars as aforesaid on any outstanding debts due and unpaid to said company, nor upon any sales uncollected. And it is further understood and agreed that the party of the first part shall render to said Champagne on the 15th days of January and July of each year a written statement showing the amount of sales and collections made by said company for six months preceding, until the whole amount of three thousand dollars shall be fully paid, and no interest shall accrue on the aforesaid three thousand dollars, or any part thereof; and it is further agreed by the party of the first part that it will pay to the said Champagne, his heirs and assigns, the further sum of two thousand dollars according to the conditions and provisions hereinbefore made for the payment of the aforesaid three thousand dollars, at the same rate and under like terms, after the full payment of the said three thousand dollars as aforesaid: provided, however, the business of said company in the manufacturing and sales of aforesaid medicines and compounds shall prove successful; such success to be determined and passed upon by the trustees of said company. And it is understood and agreed that, in the event of the sale of any of the aforesaid patents, the said company will pay over to the said Champagne, his heirs, representatives, or assigns, one-half of the net proceeds from such sales, until the whole three thousand dollars above provided for shall be paid. And it is further understood and agreed between the parties to this agreement that the said company prosecute and execute such sales, as regards the manner and time thereof, as it shall judge expedient and proper. Payments to said Champagne to be made semiannually as above provided." At the execution of the contract, $1,000 was paid thereupon, and thereafter $606.32. In 1890 an action was brought by this plaintiff against this defendant, charging it with having abandoned the sale of two of the compounds, and also with having received sufficient sums, so that under the contract a considerable amount was due to the plaintiff thereunder. An answer was interposed by the defendant, and the causes of action stated in the complaint were thereafter settled by the payment of $150 by the defendant to the plaintiff. This $150 is included in the $606.32. This action was brought in 1892 to recover further percentages claimed to be due from the defendant, and to compel the defendant to furnish the statement required by the contract. In 1894 the defendant abandoned the sale of all of these compounds. The referee directed judgment for the full $6,000, less the amounts that had been paid, on the theory that, as this was an equitable action, judgment will be directed upon the facts as they appeared at the trial.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

F. A. Rowe, for appellant.
Richard L. Hand, for respondent.

SMITH, J. The appellant challenges this judgment upon three grounds: First, that judgment has been rendered for damages which did not accrue until after the commencement of the action; second, that the plaintiff's damage for a breach of the contract was paid in full by the settlement of the action brought in 1890; third, that the referee should not have included in the damages found the $2,000 stipulated to be paid if the sales of the compounds were successful.

The decision of the defendant's first ground of challenge seems to rest upon the answer to the question whether this action be one at law or in equity. If the cause of action stated be a legal cause of action, it seems to be settled that the plaintiff's recovery must be limited to the cause of action existing when the action was begun. If, however, the cause of action be one in equity, the rule seems to be different, and relief is given upon the rights of the parties at the time of the trial. Kilbourne v. Board, 137 N. Y. 178, 33 N. E. 159; Haffey v. Lynch, 143 N. Y. 248, 38 N. E. 298; Peck v. Goodberlett, 109 N. Y. 189, 16 N. E. 350. That this is an action in equity seems to us clear. The judgment asked is, in part, that the defendant shall deliver to the plaintiff the statement stipulated for in the contract. This relief is only possible in equity.. The fact that damages are also sought does not take this action out of the forum of equity, where, only, the plaintiff can get all the relief to which he is entitled.

The defendant's second ground of challenge seems to be answered by the stipulation of settlement. In that stipulation it is provided that the settlement is for moneys due up to the 1st of August, 1890. In the stipulation is indicated an intent to continue the contract in force, by the provision that nothing contained in the stipulation was to be considered as modifying the contract.

The defendant's third objection to the judgment seems more substantial. The obligation of the defendant to pay $4,000 for these patents seems to have been an absolute obligation, not in any way contingent upon the success of the business. The manner of its payment, by a percentage of its proceeds of the sales, contemplated a continuance of the business. Upon the abandonment by the defendant of the sale of these compounds, we agree with the learned referee that the defendant made itself liable for the full amount of the $4,000 which it had agreed absolutely to pay. In the judgment directed by the referee, however, is included the $2,000, which was due only if the business were successful. Whether or not the business was successful was, under the contract, to be determined by the trustees of the defendant; and it is further provided by the contract that the defendant was to prosecute and execute such sales, as regards the manner and time thereof, as defendant should judge expedient and proper. This contract is not akin to that class of contracts which provide that work shall be done "to satisfaction." Upon the determination by the defendant's trustees as to the manner of the prosecution of these sales, and as to its success or failure, depends the whole course of defendant's business, and the investment of large sums of money by the defendant. With so much depending upon their determination, when by the contract those questions were left, in express words, to the determination of the defendant's trustees, something more was meant than that they must adopt the methods that a court or jury might say were proper or usual in the prosecution of such sales. These provisions in this contract are more like provisions in a chattel mortgage authorizing the mortgagee, if he shall feel himself unsafe, to take possession of the mortgaged property. In Allen v. Vose, 34 Hun, 57, the general

term of the Fifth department has held that the act of a mortgagee in taking the property under this clause could not be impeached upon the ground that he did not have reasonable cause to feel himself unsafe, and could only be impeached on the ground of his bad faith. The construction of the clause as set forth in Jones, Chat. Mortg. § 431, is there approved; and it is held that the act of his in taking the property creates a presumption that the mortgagee did feel himself unsafe, and that such a clause vested in the mortgagee an absolute discretion to take possession of the property whenever he deemed himself insecure, and that the right did not depend upon the fact that he had reasonable ground for deeming himself insecure. The authority further says:

"If the mortgagor wishes to retain possession of the property until the mortgagee shall have reasonable grounds to deem himself insecure, he can insert or have inserted a stipulation to that effect in the mortgage; or if he wishes to go still further, and retain possession of the property until the mortgagee shall become in fact insecure, he can have a stipulation put into the mortgage to that effect. But, if he choose only to have inserted in the mortgage a clause that he shall have the right to possession of the property until the mortgagee shall deem himself insecure, then he can only retain the property until the mortgagee does in fact deem himself insecure, and he has no right to question the grounds upon which the mortgagee entertains such feeling of insecurity."

There is no finding here, nor is there any pretense, of bad faith upon the part of the defendant's trustees. The parties might well have had in mind that opinions might differ as to how such a business should properly be conducted, and as to what constituted success. The manner of the introduction of these compounds to the trade, the test that should be made of their salability, and how far that test should be prosecuted, were all questions of judgment. So, also, was the question whether or not the compounds were so meritorious as that their sale would insure success. It was competent, then, for the parties to stipulate, as they have, that these matters should be left to the judgment of the defendant's trustees. The witness Kidder has sworn that the defendant's trustees determined that the sale of these compounds was not a profitable venture. Having made the determination in good faith, after what they considered a fair trial, it was their right to abandon entirely in 1894 the sale of the compounds, without becoming liable for the payment of the $2,000, for which they were liable only in case of the success of the sales.

With these conclusions reached, it follows that the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event, unless the respondent will stipulate to reduce the judgment by deducting therefrom the sum of $2,000, with interest from 1st of August, 1894, in which case the judgment as modified may stand affirmed. without costs of the appeal to either party. All concur; HERRICK, J., in the result.